UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KIMBERLY FRANETT-FERGUS, an individual, | NO:  2:15-CV-0242-TOR |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| OMAK SCHOOL DISTRICT 19, a public school; et al, | |
| Defendants. | |

BEFORE THE COURT are Defendant Omak School District's Motion for Summary Judgment (ECF No. 14) and K12's Motion for Summary Judgment (ECF No. 16). These matters were heard on June 22, 2016, in Spokane, Washington. Aaron V. Rocke appeared on behalf of Plaintiff Kimberly Franett-Fergus. James E. Baker appeared on behalf of Defendant Omak School District. Keith A. Kemper appeared on behalf of Defendants K12 Management, Inc.; K12 Virtual Schools LLC; K12, Inc.; and K12 Washington LLC. The Court—having

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT~ 1

reviewed the briefing, the record, and files therein and heard from counsel—is

fully informed.

### BACKGROUND

This case concerns the alleged discriminatory decision not to hire Plaintiff

Kimberly Franett-Fergus for a teaching position with Omak's online school. In her

First Amended Complaint, Plaintiff asserts that Defendants "improperly awarded

the position to a less qualified candidate because of that candidate's religion, race,

and/or national origin," ECF No. 10 ¶¶ 3.2, 3.6, which individual "was apparently

of Islamic faith and national origin or race of those consistent with an Arabic or

Persian heritage," *id.* ¶ 2.8. Plaintiff contends she was discriminated against

because she is white and possibly because she is of the Christian faith, asserting

that Defendants hired a candidate who looked different from her in an effort to add

"diversity" to the staff. Plaintiff asserts two federal causes of action: (1)

employment discrimination on the basis of her race, religion or national origin

under Title VII, and (2) conspiracy to interfere with her civil rights under § 1985.[1]

*Id.* ¶¶ 3.5-3.9, 3.11-3.14. Franett-Fergus also asserts two similar causes of action

under Washington State law: (1) discrimination in violation of the Washington

---

[1] Plaintiff agreed to the dismissal of her federal cause of action under 42 U.S.C.

§ 1981. ECF No. 30 at 4.

Law Against Discrimination, and (2) conspiracy and action in concert. *Id.* ¶¶ 3.1-3.4, 3.10.

In the instant motions, Defendant Omak School District ("District" or "Omak") and Defendants K12 Management, Inc.; K12 Virtual Schools, LLC; K12, Inc.; and K12 Washington LLC (collectively, "K12") move for summary judgment on all claims.

## FACTS

The following are the undisputed material facts unless otherwise noted.

In the summer of 2013, Washington Virtual Academy ("WAVA") posted a job announcement for the position of WAVA Omak High School Learning Assistant Program ("LAP") Math Specialist for the 2013-2014 school year.[2] ECF No. 15 at 3 (Omak Statement of Specific Facts); *see* ECF No. 15-1 at 6-8 (Job Posting).

Plaintiff applied for the LAP position and was one of three applicants selected to interview. ECF No. 17 at 4 (K12's Statement of Material Facts ("K12-SMF") 12); *see* ECF Nos. 33 (undisputed). There is no dispute that Plaintiff was qualified for the position. Plaintiff previously taught at the Monroe School District

---

[2] The District operates its WAVA program through a contract provider, K12 Inc. ECF No. 15 at 3.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT~ 3

in a position administered by WAVA. ECF No. 17 at 3 (K12-SMF 2); *see* ECF No. 33 (undisputed). In total, Plaintiff had over ten years of teaching experience by the time she interviewed for the LAP position. ECF No. 33 at 12. Her experience included both brick-and-mortar and virtual classroom teaching, as well as working with at-risk students, which were both listed as preferred qualifications for the position. *Id.*

Interviews for the LAP position were conducted on September 5, 2013. ECF No. 17 at 5 (K12-SMF 19); *see* ECF No. 33 (undisputed). The interviews were conducted by an interview committee comprised of the following members: (1) Jayme Evans, WAVA High School Principal; (2) Nicholaus Sutherland, WAVA High School Vice Principal; (3) Kristin Hirschmann, WAVA Special Education Director; (4) Deirdre Crebs, Omak English Teacher; and (5) Mark Conley, Omak Academic Advisor. ECF No. 17 at 4 (K12-SMF 14); *see* ECF No. 33 (undisputed). Both Conley and Crebs had previously worked with Plaintiff and had written recommendations on her behalf, which letters were included in Plaintiff's application. ECF No. 17 at 4-5 (K12-SMF 16); *see* ECF No. 33 (undisputed).

During the interview, all of the committee members, save for Evans, used a question and scoring rubric. ECF Nos. 17 at 5 (K12-SMF 23, 24); 33 at 3; *see* ECF No. 18-2 at 13 (Evans' Deposition) (stating that she "sometimes" does and "sometimes" does not use the scoring rubric). The scoring rubric was created by

WAVA and is primarily used to keep the interview questions uniform and assist discussion of the candidates. ECF No. 17 at 5-6 (K12-SMF 25, 27); *but see* ECF No. 33 at 4-5.[3]

At the close of the interviews, the interview committee met and discussed the three candidates, focusing their discussion on Plaintiff and one other candidate. ECF No. 17 at 6 (K12-SMF 28). While both the top candidates scored well and the committee found both candidates "highly qualified," ECF No. 18-2 at 17 (Evans' Deposition), Plaintiff received a slightly higher overall rating from the four interviewers who used the rubric. ECF No. 33 at 5; *see* ECF No. 33-5 (interview tally). Evans did not use the rubric but noted "[n]o mention of collaboration" when interviewing Plaintiff and recalls that she was concerned about Plaintiff's ability to collaborate with others. ECF Nos. 17 at 5 (K12-SMF 24); 33 at 4. Evans also

---

[3] Plaintiff highlights the Omak School District Administrative Procedure on Recruitment and Selection of Staff, which instructs staff to "[r]ate the candidate on a scale for each response to each question," ECF No. 33-4 at 4; however, there is nothing in this policy showing that it applies to WAVA or K12 hiring recommendations. At any rate, this fact is not material to Plaintiff's discrimination or conspiracy claims: Evans did not use the scoring for all three candidates, and Sutherland and Hirschmann did not score the third applicant. ECF No. 39 at 4.

remembers hearing some negative and positive comments about Plaintiff, including that Plaintiff was "difficult to work with at times," but was unable to remember further specifics or from whom she heard such information. ECF Nos. 17 at 5 (K12-SMF 18); 33 at 2. At the beginning of the post-interview discussion, Hirschmann made a comment about needing to add "diversity" at WAVA, with which comment Evans agreed. ECF Nos. 17 at 6 (K12-SMF 30); 33 at 5-6. Ultimately, three members of the committee—Sutherland, Crebs, and Conley— recommended Plaintiff for the position; Evans and Hirschmann recommended the other candidate. ECF No. 17 at 6 (K12-SMF 29); *see* ECF No. 33 (undisputed).

After the interview committee discussions, Evans conducted reference checks. ECF Nos. 17 at 6 (K12-SMF 34); 33 at 6. Evans called three references for the other top candidate and two references for Plaintiff, explaining that she knew Plaintiff's third reference and did not find his input valuable. ECF Nos. 33 at 6; 39 at 6. During Evans' call with one of Plaintiff's references, Michael Feuling, Evans noted that Feuling would hire Plaintiff again, but not on a full-time basis, and also noted, "Cannot accept authority" in connection with this response;[4] however,

_____

[4] In a declaration filed with this Court, Feuling states that he "cannot imagine that [he] would have said that about Ms. Fergus," that he "did not and [does] not think that Ms. Fergus cannot accept authority," and that "[w]hile [he] cannot specifically

Feuling did give Plaintiff a rating of 5 out of 5 for every question. ECF Nos. 17 at 6 (K12-SMF 35); 33 at 6-7; *see* 18-2 at 71-72, 143 (Evans' Deposition). Overall, Plaintiff received a slightly higher average reference rating with her two scores over the other top candidate with her three scores. ECF No. 33 at 11.

The committee did not make the final hiring recommendation. *See* ECF No. 33-1 at 42-43. Rather, Evans, on behalf of K12, made the determination that the other top candidate was a "better fit" for the LAP position. ECF Nos. 17 at 6 (K12-SMF 36); 33 at 7-8. This candidate had two years of brick-and-mortar teaching experience at the time of her interview, ECF No. 33 at 13, and had served as an online tutor where she used the same online tools required for the LAP position, ECF No. 39 at 9; *see* ECF No. 39-3 at 3 (Evans' Deposition). She also had an engineering background. ECF No. 17 at 5 (K12-SMF 17). Evans ultimately selected this candidate for the position primarily because her engineering background made it possible for her to teach multiple subjects at the high school level. ECF Nos. 17 at 6-7 (K12-SMF 37); 33 at 8-9; 33-1 at 49. Evans then offered

---

remember what [he] said to Ms. Evans, [he does] not think [he] ever said that someone 'cannot accept authority.'" ECF No. 34 at 2-3. However, this declaration does not raise a genuine issue of material fact as to why Evans made wrote "Cannot accept authority" in her contemporaneous notes.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT~ 7

1   the position to this candidate on the condition that Omak approve the hiring

2   recommendation. ECF Nos. 17 at 7 (K12-SMF 38); 33 at 9. LeAnne Olson,

3   Omak's Human Resources Director and the employee responsible for authorizing

4   the hire, received Evans' recommendation and an authorization to hire form via

5   email this same day. ECF Nos. 15 at 4; 31 at 4-5; *see* ECF No. 31-19 (Contract

6   Between Omak and K12) ("K12 shall have the authority to recommend people for

7   Program positions . . . although both Parties hereby agree that the District shall

8   make all final decisions about hiring . . . ."). The District accepted the

9   recommendation and the other applicant was hired. ECF No. 15 at 5.

10          Evans relayed the hiring decision to Plaintiff, explaining that Plaintiff had

11  not been selected because WAVA was going in a "different direction" and that the

12  person selected was "better suited." ECF Nos. 17 at 7 (K12-SMF 41); 33 at 9; *see*

13  18-1 at 14 (Plaintiff's Deposition). Plaintiff later asked Conley, one of the

14  interviewers, what she could have done differently. ECF No. 17 at 7 (K12-SMF

15  42); *see* ECF No. 33 (undisputed). Plaintiff recalls Conley commenting that

16  Plaintiff would have gotten the job if she were Muslim and recounting the

17  comments at the post-interview discussion about the need to add "diversity." ECF

18  Nos. 17 at 7 (K12-SMF 42); 18-1 at 13 (Plaintiff's Deposition); *see* ECF No. 33

19  (undisputed). In Conley's view, the successful candidate "appeared . . . to be of

20  Arabic descent and was wearing a hajib [sic]." ECF No. 18-9 at 6 (Conley

Declaration). After talking to Conley, Plaintiff "Googled" the successful applicant and, based on her name and picture, similarly concluded that she was Muslim. ECF No. 17 at 7-8 (K12-SMF 44); *see* ECF No. 33 (undisputed).

Plaintiff identifies as a Caucasian, Christian American. ECF Nos. 17 at 3 (K12-SMF 1); 18-1 at 29-30 (Plaintiff's Deposition). The successful candidate, since joining WAVA, has self-reported as "Asian," ECF Nos. 31 at 6; 39 at 9; however, there is no other evidence regarding with which race, national origin, or religion she identifies. Plaintiff acknowledges that the interviewers did not ask any of the candidates to reveal their race, religion, or national origin and that she did not otherwise share this information about herself with the committee. ECF Nos. 17 at 5 (K12-SMF 22); 18-1 at 10-11 (Plaintiff's Deposition).

Instead, Plaintiff's deposition testimony and briefing unabashedly assert that the race, religion, or national origin of the candidates should have been apparent. Or, at least, the non-white, non-Christian, and non-American traits of the successful candidate—as assumed by Plaintiff—should have been obvious:

- "Q. Well, did you believe she was Muslim? A. I believed that she was based on what was told to me [by Mark Conley]. . . . And based on her picture." ECF No. 18-1 at 13 (Plaintiff's Deposition).

- "Q. And she added diversity how? A. Because she did not look like me. Was not white. She wore a hijab.[5] Her skin color, her name . . . there were many reasons to assert that she had a different background, a different faith than I did." *Id.* at 17.

- "Q. So essentially you're claiming you were discriminated against because you appear to be white and [the other candidate] did not; is that right? A. Yes." *Id.* at 18.

- "Q. [A]re you alleging you were discriminated against because you are white? A. Yes . . . I was told that in the interview committee it was said that they needed to add diversity to the staff and they chose someone who looked different, who looked like they were a minority." *Id.* at 32.

---

[5] Plaintiff repeatedly refers to the successful candidate's head covering as a "hijab," which is a head covering worn by some Muslim women; however, there is nothing in the record showing that the successful candidate was actually wearing a hijab, as opposed to some other religious—or non-religious—head covering or scarf. Unsurprisingly, Plaintiff testified "No" to the question whether she "know[s] of any religions other than Muslims who wear head coverings or where the women wear head coverings." ECF No. 15-2 at 26-27.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT~ 10

- "Q. [A]re you of the belief that you were discriminated against because you're a Christian? . . . A. I believe that they hired the other person because potentially she wasn't Christian." *Id.* at 33.

- "Ms. Fergus could form a reasonable inference about [the successful candidate's] race or religion." ECF No. 31 at 3 (Plaintiff's Statement of Facts).

- "[J]ust because Ms. Fergus did not disclose her religion to any non-K12 Omak employees does not mean that they could not come to a reasonable inference about her religious beliefs, or at least a reasonable inference about the religious groups to which she did not belong." *Id.* at 4.

- "[E]ven though the interviewers did not necessarily ask the candidates about their race, religion, or national origin, [the successful candidate] appeared to be of Middle Eastern or Persian descent and was wearing a hijab during her interview." ECF No. 33 at 3 (Plaintiff's Response Brief).

//

//

//

//

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT~ 11

**DISCUSSION**

**A. Standard of Review**

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that the trier-of-fact could find in favor of the non-moving party. *Id.* "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and alterations omitted); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968) (holding that a party

is only entitled to proceed to trial if it presents sufficient, probative evidence supporting the claimed factual dispute, rather than resting on mere allegations). Moreover, "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007), and only evidence which would be admissible at trial may be considered, *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). *See also Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) ("[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." (internal quotation marks and brackets omitted)).

//

//

//

//

**B. Discrimination Claims**

Defendants move for summary judgment on both Plaintiff's state and federal discrimination claims, primarily asserting that Plaintiff cannot rebut their legitimate, nondiscriminatory reasoning for hiring the successful candidate instead of Plaintiff. ECF Nos. 14 at 13-14; 16 at 9-12.

Both federal and state law prohibit an employer from discriminating on the basis of an individual's protected trait, be it her race, religion, or national origin. Under Title VII, it is an "unlawful employment practice for an employer . . .  to fail or refuse to hire . . . any individual . . . because of such individual's race, color, religion, . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, under the Washington Law Against Discrimination, "[i]t is an unfair practice for any employer . . . [t]o refuse to hire any person because of . . . race, creed, color, [or] national origin . . . ."[6] RCW 49.60.180(1).

At the summary judgment stage, the disparate treatment plaintiff must first establish a prima facie case of discrimination by offering evidence that "give[s] rise to an inference of unlawful discrimination." *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450

---

[6] Washington courts look to federal law when construing the WLAD. *See Kumar v. Gate Gourmet Inc.*, 180 Wash.2d 481, 491 (2014).

U.S. 248, 253 (1981)). A plaintiff may do so by either meeting the four-part test laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or by providing direct evidence that the challenged employment action was based on impermissible criteria. *Id.*; *Scrivener v. Clark Coll.*, 181 Wash.2d 439, 446 (2014). Under *McDonnell Douglas*, a plaintiff establishes her prima facie case by presenting the following: she (1) belongs to a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) that the position remained open and was ultimately filled by a similarly situated person outside the plaintiff's protected class.[7] *See McDonnell Douglas Corp.*, 411 U.S. at 802; *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253.

---

[7] Some Circuits have applied a modified version of the *McDonnell Douglas* framework to reverse discrimination cases, requiring that a member of a non-minority racial group show some additional "background circumstances" suggesting discrimination; however, the Ninth Circuit has not yet adopted such an approach. *See Zottola v. City of Oakland*, 32 F. App'x 307, 311 (9th Cir. 2002) (discussing inter-circuit split but declining to hold whether the additional "background circumstances" factor is required within this Circuit).

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT~ 15

1    The burden then shifts to the employer to produce "evidence that the

2    plaintiff was rejected, or someone else was preferred, for a legitimate,

3    nondiscriminatory reason." *Id.* at 254; *Chuang v. Univ. of Cal. Davis, Bd. of*

4    *Trustees*, 225 F.3d 1115, 1123-24 (9th Cir. 2000); *Scrivener*, 181 Wash.2d at 446.

5    To satisfy its burden, "the employer need only produce admissible evidence which

6    would allow the trier of fact rationally to conclude that the employment decision

7    had not been motivated by discriminatory animus." *Burdine*, 450 U.S. at 257

8    (rejecting the notion that the defendant must persuade the court that it had

9    convincing, objective reasons for preferring the chosen applicant above the

10   plaintiff). This burden is merely one of production, not persuasion. *Reeves v.*

11   *Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

12       If the employer meets this burden, "the presumption of discrimination drops

13   out of the picture and the plaintiff may defeat summary judgment by satisfying the

14   usual standard of proof required in civil cases under Fed. R. Civ. P. 56(c)."

15   *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006)

16   (internal quotation marks omitted) (citing *Reeves*, 530 U.S. at 143). A disparate

17   treatment plaintiff can meet this standard in one of two ways: (1) by offering

18   evidence, either direct or circumstantial, "'that a discriminatory reason more likely

19   motivated the employer' to make the challenged decision;" or (2) by offering

20   evidence "that the employer's proffered explanation is unworthy of credence." *Id.*

(quoting *Burdine*, 450 U.S. at 256); *Scrivener*, 181 Wash.2d at 446 ("Evidence is sufficient to overcome summary judgment if it creates a genuine issue of material fact that the employer's articulated reason was a pretext for a discriminatory purpose."). "When the evidence is direct, [the court] require[s] very little evidence to survive summary judgment in a discrimination case." *Boeing Co.*, 577 F.3d at 1049 (internal quotation marks and citations omitted). "But when the plaintiff relies on circumstantial evidence, that evidence must be specific and substantial to defeat the employer's motion for summary judgment." *Id.* (citation omitted).

### 1. Prima Facie Case

This Court finds Plaintiff has failed to establish a prima facie case under the *McDonnell Douglas* framework based on her religious beliefs or national origin; although, it is at least arguable that she has created an inference of racial discrimination.

As an initial matter, the parties do not dispute that Plaintiff has satisfied three of the four elements of the *McDonnell Douglas* prima facie case[8]: (1) she

---

[8] Despite her arguments to the contrary, Plaintiff has failed to present any direct evidence of discrimination. "Direct evidence 'is evidence which, if believed, proves the fact [of discriminatory animus] *without inference or presumption*.'" *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 662 (9th Cir. 2002).

belongs to a protected class, whether it is based on her race (Caucasian), religion (Christianity), or national origin (American); (2) she was qualified for the LAP position; and (3) she was not hired for the position. The issue becomes whether Plaintiff has shown that someone outside of her protected class was treated more favorably because of discriminatory animus.

---

Plaintiff highlights Hirschmann's comment regarding the need to add "diversity" to the WAVA staff and Evans' agreement therewith as direct evidence of discrimination; however, there is nothing—besides Plaintiff's own speculation— that gives this comment any racial or religious underpinnings. The term diversity encompasses a variety of meanings, ranging from an individual's socioeconomic background to her travel experience. Thus, this statement, standing alone, does not prove the fact of discriminatory animus "without inference or presumption." *See Johnson v. Metro. Gov't of Nashville & Davison Cty., Tenn.*, 502 F. App'x 523, 534-35 (6th Cir. 2012) ("Statements reflecting a desire to improve diversity do not equate to direct evidence of unlawful discrimination" because such a statement does not prove that the employer had a discriminatory animus and acted on it.").

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT~ 18

Regarding her claims of discrimination based on national origin[9] and religion, Plaintiff has demonstrably failed to show that the successful applicant was outside of her protected class and that the hiring committee was aware of these alleged differences between the two candidates. Plaintiff concedes that the interviewing committee did not ask the candidates to disclose their religion or national origin, and that Plaintiff did not otherwise disclose her information. *See* ECF No. 18-1 at 10-11, 18.

Instead, Plaintiff's case rests on her own assumptions—assumptions she then erroneously imputes to Evans and the hiring committee. That is, Plaintiff's case primarily rests on her own view that her differences with the successful candidate, including alleged differences in religious beliefs, should have been apparent to the hiring committee: "[S]he did not look like me. Was not white. She

---

[9] The EEOC "defines national origin discrimination broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. § 1601.1.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT~ 19

wore a hijab.[10] Her skin color, her name . . . there were many reasons to assert that she had a different background, a different faith than I did." ECF No. 18-1 at 17 (Plaintiff's Deposition); *see also* ECF Nos. 18-1 at 13 ("Q. Well, did you believe she was Muslim? A. I believed that she was based on what was told to me [by Mark Conley]. . . . And based on her picture."), 33 ("Q. [A]re you of the belief that you were discriminated against because you're a Christian? . . . A. I believe that they hired the other person because potentially she wasn't Christian.").

In other words, based on the successful candidate's olive skin tone and head covering, Plaintiff assumes that she is of Middle Eastern or Persian descent and is a Muslim—or at least assumes that the successful candidate is non-Christian and non-American—and asserts that these attributes, as well as Plaintiff's, should have been apparent to the interviewers as well.[11] Plaintiff went so far as to present a

---

[10] Other than Plaintiff's and Conley's rank speculation, there is no evidence that the successful candidate was actually wearing a "hijab" as opposed to some other religious (or non-religious) head covering.

[11] Plaintiff also points to evidence in the record showing that the successful applicant self-reported as "Asian" *after* she was hired. ECF No. 33-8 at 7. To the extent this even constitutes a national origin under Title VII, this evidence does not

photo of the successful candidate in the introduction to her brief in an effort to show the Court just how apparent the successful candidate's attributes are. The Court will not engage in such blatant stereotyping, which truly is the grossest form of speculation and conjecture.

More importantly, Evans, the person who made the ultimate hiring recommendation, expressly testified that she did not make the same assumptions that Plaintiff did. ECF No. 18-2 at 13 ("Q. Did it appear to you that [the successful candidate] was of Arabic [descent]. A. I couldn't determine her descent. . . . Q. Did you make an assumption that she was Muslim. A. I did not."). At most, Evans observed that the successful candidate wore a head scarf during the interview and appeared "non-Caucasian." *Id.* Plaintiff cannot create an inference of intentional discrimination without showing that the alleged discriminatory actor was even aware of the bases upon which she is supposedly discriminating.

Regarding her claim of racial discrimination, Plaintiff has arguably created an inference of discrimination, albeit a weak one, based on one piece of evidence: Evans' deposition testimony acknowledging that the successful candidate appeared "non-Caucasian," *see id.* at 13, and thus perceived to be "outside of" Plaintiff's

---

show that the recommenders knew of the candidate's national origin or perceived her as having a certain national origin *at the time* of the hiring decision.

protected class as a white or Caucasian individual. Accordingly, Plaintiff has met her initial burden and created an inference of discrimination on the basis of race alone.

### 2. Legitimate, Non-Discriminatory Reasoning

This Court finds Defendants have come forward with legitimate, non-discriminatory reasoning for hiring the successful applicant over Plaintiff. While both Plaintiff and the other top candidate were qualified for the LAP position, the successful candidate's engineering background created the possibility of her teaching multiple subjects—especially relevant given the funding insecurity of the LAP position, ECF No. 17 at 4—thus leading to Evans' conclusion that she would be a "better fit" or "better suited" for the position. As the Supreme Court admonished decades ago, Title VII does not deprive the employer of "discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Burdine*, 450 U.S. at 259 ("The statute was not intended to diminish traditional management prerogatives." (internal quotation marks omitted)). Defendants also note that Evans recalls hearing some negative comments about Plaintiff before the interview, including that Plaintiff could sometimes be difficult to work with, ECF No. 18-2 at 7; that Evans' made a note during the interview questioning Plaintiff's ability to collaborate, *id.* at 18; and that

1   one reference with whom Evans spoke, Michael Feuling, made comments that led

2   Evans to question Plaintiff's ability to accept authority, *id.* at 21.

3        Accordingly, because Defendants have come forward with legitimate, non-

4   discriminatory reasoning for hiring the successful applicant, Plaintiff's weak

5   inference of racial discrimination simply "drops out of the picture" *Cornwell*, 439

6   F.3d at 1028, and the burden shifts back to Plaintiff to demonstrate that this

7   reasoning is mere pretext.

8                        **3.  Pretext**

9        This Court finds Plaintiff has failed to present a genuine issue of material

10   fact that Defendants' articulated reasoning was pretextual. Plaintiff argued, in her

11   briefing and at oral argument, that (1) the successful applicant's ability to teach

12   multiple subjects was irrelevant as this skill was not listed in the job posting; (2)

13   the contention that the successful candidate was hired because she was a "better

14   fit" is vague and pretextual on its face; (3) the job reference who allegedly said

15   Plaintiff had trouble with authority declares he would not have said that about

16   Plaintiff; (4) other negative comments Evans allegedly heard about Plaintiff have

17   not been put forward with any specificity; (5) two members of the hiring

18   committee, including Evans, expressed the need to add "diversity" to the WAVA

19   program; and (6) Plaintiff was more qualified for the position. This circumstantial

20   evidence of discrimination, however, is not sufficiently "specific and substantial"

to raise a triable issue of material fact as to whether Defendants' proffered reasons are mere pretext for unlawful discrimination. *Boeing Co.*, 577 F.3d at 1049.

First, the successful candidate's ability to teach multiple subjects was a relevant reason to consider her a "better fit" for the position. And the fact that this ability was not expressly listed on the posting does not mean it was not a relevant consideration to K12's hiring recommendation and Omak's hiring decision— hiring decisions are nuanced and candidates for teaching positions can undoubtedly gain an edge based on a variety of considerations, such as an applicant's ability or willingness to contribute to the employer's multifaceted goals.

As Defendants noted, funding for LAP positions is uncertain given that it is allocated yearly by the legislature, ECF No. 17 at 4; thus, even if funding for the 2013-2014 LAP math position disappeared, Defendants would have a reasonable interest in wanting to place the chosen candidate, whom they have spent time and resources training, into an open position within their organization. Indeed, the LAP math position at issue in this case *was* eliminated after the first year, and the successful candidate was able to stay on with WAVA because she was able to teach science classes. *Id.* at 7. While the phrase "better fit," without more, can be vague, *see Scrivener*, 181 Wash.2d at 448-49, Defendants have explained exactly why the successful candidate was a "better fit" for the LAP position, and Plaintiff has not shown that a reasonable jury would find this explanation unbelievable.

Second, Plaintiff has not shown pretext by merely calling into doubt the extent of the negative feedback Evans received about Plaintiff. For one, Plaintiff does not dispute that Evans heard both positive and negative feedback about Plaintiff prior to the interview; she just faults Evans for not remembering the feedback—provided to Evans almost three years prior to her deposition—with any great specificity. Further, while Feuling might not have expressly said that Plaintiff "Cannot accept authority," his declaration does not create a genuine issue as to why Evans would make this note during the course of their conversation: it merely states that he "cannot imagine that [he] would have said that about Ms. Fergus," that he "did not and [does] not think that Ms. Fergus cannot accept authority," and that "[w]hile [he] cannot specifically remember what [he] said to Ms. Evans, [he does] not think [he] ever said that someone 'cannot accept authority.'" ECF No. 34 at 2-3. At bottom, Feuling does not deny saying Plaintiff cannot accept authority (he just does not remember saying it), nor is he in the position to explain why Evans would make this note (which is not necessarily a direct quote of Feuling's) during their conversation. Even disregarding these negative comments about Plaintiff, Defendants' primary justification for hiring the chosen candidate—her ability to teach multiple subjects—still stands and is wholly divorced from any consideration of the candidates' perceived races.

Third, the comments attributed to Evans and Hirschmann regarding the need to add diversity to the program do not make Defendants' explanation unbelievable or otherwise show that unlawful discrimination more likely motivated the hiring decision. The term "diversity" encompasses a variety of meanings, ranging from an individual's socioeconomic background to her travel experience. It is Plaintiff's mere suspicion—fueled by Conley's comments that the successful applicant *appeared* Muslim and Arabic and Plaintiff's own conclusions based on a picture and a name—that Hirschmann and Evans used the term to mean racial diversity. Again, information regarding the candidate's race and other protected traits was neither requested of nor offered by the applicants during the hiring process. Plaintiff's mere suspicion that the use of the word "diversity" meant "racial diversity" is not direct evidence, *see Johnson*, 502 F. App'x at 534-35, and, on this record, does not rise to the level of circumstantial evidence of discrimination.

Finally, Plaintiff has not shown that she was more qualified than the chosen candidate. While evidence showing that a plaintiff's qualifications were "clearly superior" to the qualifications of the applicant selected can support a finding of pretext, *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003) (quoting *Odima v. Westin Tuscon Hotel*, 53 F.3d 1484, 1492 (9th Cir. 1995)), Plaintiff has failed to make such a showing.

In support of her assertion that the successful candidate was less qualified than her, Plaintiff asserts that the successful candidate had less teaching experience and no experience teaching in an online format. True, Plaintiff had more years of teaching experience, including experience teaching at-risk students. However, the successful candidate had the requisite teaching experience, including online tutor experience and familiarity with the online tools used by WAVA, ECF No. 39-3 at 3 (Evans' Deposition), and, unlike Plaintiff, had an engineering background, which made her able to teach multiple courses.

Moreover, both candidates received similar interview and reference scores, with Plaintiff scoring only marginally higher than the successful candidate. ECF No. 33 at 11 (Plaintiff's Statement of Facts) (noting that Plaintiff received an average reference score of 4.83 out of 5; the successful candidate received a score of 4.71 out of 5); 33-5 (interview tally) (showing that Plaintiff received an average interview score of 27.5; the successful candidate received a score of 27.5).

Finally, while Evans and the hiring committee believed both candidates were "highly qualified," ECF No. 18-2 at 17 (Evans' Deposition), Evans heard that Plaintiff could be sometimes difficult to work with and noted some concerns about Plaintiff's ability to collaborate and accept authority, *id.* at 7, 18, 21. Title VII "was not intended to diminish traditional management prerogatives," *Burdine*, 450 U.S. at 259 (internal quotation marks omitted), and it is not the place of this Court to

1  second-guess Defendants' hiring decision when faced with two qualified and

2  experienced candidates.

3       In short, Plaintiff has failed to put forth sufficiently specific and substantial

4  circumstantial evidence that Defendants acted with a discriminatory animus.[12] *See*

5  *Boeing*, 577 F.3d at 1049. Viewing the evidence in the light most favorable to

6  Plaintiff, this Court finds no reasonable jury could conclude that Defendants

7  intentionally discriminated against Plaintiff because of her race, or any other

8  protected trait. Accordingly, Defendants' motions for summary judgment on the

9  federal and state discrimination claims are **GRANTED**.

10

          ————————————

11  [12] Plaintiff's arguments highlighting Evans' non-use of the scoring rubric and

12  Evans' decision to decide against the majority vote of the hiring committee, to the

13  extent they are intended to show pretext, have no merit. For one, there is nothing in

14  the record showing that Evans, a K12 employee, was required to use the scoring

15  rubrics, which merely served as a discussion tool. ECF No. 17 at 5-6 (K12 SMF

16  25, 27). Further, to the extent Evans was required to use the scoring rubrics, her

17  failure—as to all three applicants—does not show discrimination against Plaintiff.

18  Finally, there is no evidence in the record that the K12 hiring recommendation had

19  to come from a hiring committee, rather than from Evans, the High School

20  Principal. *See* ECF No. 33-1 at 42-43.

**C. Conspiracy Claims**[13]

**1. 42 U.S.C. § 1985(3)**

Defendant K12 moves for summary judgment on Plaintiff's federal conspiracy claim, primarily questioning any evidence of an agreement or racial animus. ECF No. 16 at 14-15.

A conspiracy claim pursuant to 42 U.S.C. § 1985(3) is comprised of the following four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bldg. of Carpenters v. Scott*, 463 U.S. 825, 828-29 (1983). Moreover, the conspiracy must also be motivated by some racial or class-based animus. *Id.* at 829; *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "To establish racial or class-based animus, a plaintiff must show 'invidiously discriminatory motivation . . . behind the conspirators' actions." *Usher*, 828 F.2d at 561.

Viewing the evidence in the light most favorable to Plaintiff, this Court finds no reasonable jury could find for her on this claim. Plaintiff's briefing points to the

---

[13] Plaintiff withdrew her conspiracy claims against Omak at oral argument.

comments shared at the post-interview hiring committee meeting by Hirschmann and Evans.[14] ECF Nos. 30 at 16-19; 32 at 16-19. However, no reasonable jury could find that the sole comment made by Hirschmann regarding the need for increased "diversity" at WAVA and Evans' agreement therewith constitutes an agreement to deprive Fergus of equal protection of the law or that Evans and Hirschmann held racial animus towards Plaintiff. Accordingly, Defendants are entitled to summary judgment on this claim.

### 2. Common Law

Finally, Defendant K12 moves for summary judgment on Plaintiff's "Conspiracy and Action in Concert" claim. ECF No. 16 at 15-16.

To establish a conspiracy under Washington common law, the plaintiff must show that "(1) two or more people combined to accomplish an unlawful purpose,

---

[14] Plaintiff's briefing also pointed to Omak's Affirmative Action Policy as evidence of an agreement to deprive Plaintiff of employment based on her race. Plaintiff has since withdrawn her conspiracy claims against Omak. At any rate, Omak's Affirmative Action Policy expressly prohibits Omak from making hiring decisions based on an applicant's protected class. ECF No. 33-18 at 2 ("Affirmative action plans may not include hiring or employment preferences based on gender or race, including color, ethnicity or national origin.").

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT~ 30

or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy." *All Star Gas, Inc. of Wash. v. Bechard*, 100 Wash. App. 732, 740 (2000). "Mere suspicion or commonality of interests is insufficient to prove a conspiracy." *Id.* "[When] the facts and circumstances relied upon to establish a conspiracy are as consistent with a lawful or honest purpose as with an unlawful undertaking, they are insufficient." *Id*. (citation omitted). The common law theory of concerted action similarly requires some sort of agreement among defendants to perform a tortious act. *See Martin v. Abbott Labs.*, 102 Wash.2d 581, 596 (1984).

Viewing the evidence in the light most favorable to Plaintiff, this Court finds no reasonable jury could find for her on this claim. Plaintiff's briefing highlights the "diversity" comment shared by Evans and Hirschmann during the hiring committee deliberations as evidencing a tacit agreement to choose a candidate based on religion, race, and/or national origin. ECF Nos. 30 at 19; 32 at 18-19. This Court finds no reasonable jury could find an agreement between these two individuals, let alone that this sole comment made by Hirschmann and with which Evans agreed, demonstrates anything more than a "[m]ere suspicion or commonality of interests." *Bechard*, 100 Wash. App. at 740. Accordingly, Defendants are entitled to summary judgment on this final claim.

//

**ACCORDINGLY, IT IS ORDERED:**

1. Defendant Omak School District's Motion for Summary Judgment (ECF No. 14) is **GRANTED**.

2. K12's Motion for Summary Judgment (ECF No. 16) is **GRANTED**.

The District Court Executive is directed to enter this Order, enter

**JUDGMENT** for Defendants, provide copies to counsel, and **CLOSE** the file.

DATED June 30, 2016.



THOMAS O. RICE
Chief United States District Judge